Good morning. We have three cases that are scheduled for oral argument this morning and the first is Tom Perez, the Secretary of Labor v. Bland Farms. And Mr. Strachan is here for the appellants. Ms. Marcus for the appellee and Mr. Strachan, you may begin. Good morning, Your Honors. Good morning. My name is Brad Strachan. I represent the appellant, Bland Farms Production & Packing. I'd like to reserve three minutes for rebuttal. You may. This is a very important case of first impression with wide-ranging implications for my client, Bland Farms, who is Georgia's leading Vidalia onion grower. Reversal of the decision below is required because Bland Farms was engaged in primary agriculture activities of cultivating, growing and producing onions and often also in harvesting onions under a fair reading of the language of the Fair Labor Standards Act. And a fair reading is required when looking at the Fair Labor Standards Act. And that has been made clear from the Supreme Court's recent decision back in April of this year in the Encino Motors v. Navarro case. We have three prior Fifth Circuit opinions that are cited in the briefs. Mitchell v. Huntsville Wholesale, Sweet Lake Land v. NLRB and the Marshall case, Marshall v. Gulf and Western Industries. Yes. And those cases were decided before 1981, before the circuit split, but they're still binding on us, aren't they? Yes, they are, Your Honor. And they set forth certain factors that we take into consideration in determining whether or not, you know, that the type of work that is performed by these employees is agriculture within the meaning of the exemption. Why don't you tell us why the district court did not properly apply those factors? They have to, happy to, Your Honor. None of those cases are on point here. And if you look at Huntsville Nurseries case, 1959, in that case, the court's opinion focused extensively on the fact that the defendant ran a warehouse, a downtown city warehouse on Canal Street and purchased produce, purchased roses and other pecan trees and other types of product from Texas and from other states and was not actually engaged in farming any of those products. Essentially, that, in that case, the defendant had its own processing facility just a couple miles away where it processed products from its own farm. But that court's decision gives short shrift and essentially says, yes, in that case, the owner of the warehouse gave counsel and advice, doesn't discuss the nature of that, doesn't discuss the activities, and really focuses on the fact that the place at issue, the location, was essentially a downtown city warehouse receiving products from all around the country that were products that did not even grow. Those cases, they set forth factors, don't they, that the district, let me ask you this way. There are four findings of fact that were made by the court in this case. Yes. First is that Bland Farms did not own the onions grown by the integrated growers until they purchased them at harvest, number one. Number two, the integrated growers bore the risk of loss, which is evidenced by the fact that Bland Farms paid the integrated growers based on the number of marketable onions. And thirdly, Bland Farms provided advice to the, only provided advice to the integrated growers regarding the growing of onions. It didn't tell them how to grow the onions. Are any of those, can you tell me that any of those findings of fact are clearly erroneous? The advice factor is clearly erroneous. It is true that Bland Farms did not own the onions, but here, here there's... None of those findings of fact are clearly erroneous. Is that correct? The finding of fact that Bland Farms provided mere advice is clearly erroneous. But the facts in this case, where Bland Farms was engaged in the production of these onions in concert with its own onions, from the planting process through July, all the way through the eight month growing period, where it had its agronomist in the fields giving direction from when to plant, how to plant, what to apply, when to do soil samples, tissue samples, giving direction on what applications to put in there, the fields to raise the onions, all the way through determining when the onions would be harvested by applying heat units. And there's extensive testimony in the record from the growers that they follow, they attempted to follow that advice, that they, for instance, decided when they were going to plant onions maybe six inches apart versus three inches apart. Were the integrated growers bound by the advice given by Bland Farms? They were expected to follow that advice by Bland Farms. But if we look to, if we look to the statute itself... Isn't there testimony in the record that they didn't always follow the advice? There is testimony in the record that they didn't always follow the advice. There's also testimony in the record that Omar Cruz and Bland Farms viewed this as they were managing and supervising that process. There's extensive testimony in the record that, for instance, Bruce Herndon said that he doesn't actually do the labor himself on his land. He, like Omar Cruz, supervises, and in this instance Omar Cruz was supervising him. Johnny McLeod says they were, we were integral with them, we were integrated with them. They were actually taking the direction, and these onions were exclusively for Bland Farms. These were not like the situation in Huntsville Nurseries or the other 5th Circuit, now 11th Circuit cases where a lot of that product was shipped off elsewhere to other places. These were an integral part from the very planning process of Vidalia onions that were grown with Bland Farms. Let me ask you this question. It seems to me that the Huntsville facts are perhaps even more favorable to the company than your facts are in your case. In other words, that Huntsville is a fociore and you lose. Let me list the facts that are set out at page 288 and 289 in footnote 2. I'm sure you're familiar with it, but this that I'm reading right now is at page 289 in footnote 2. Huntsville actually had control of the land in that case. It was leased from the grower to Huntsville, so that's more favorable to the government than in your case. I'm reading this, the quote, the crop to be the property of Huntsville at all times. So Huntsville actually owned the crop in that case, which is not true in your case. That wasn't owned until they bought it. Then it says, at all times, the grower was under the supervision of Huntsville as to the best methods of planting, production, digging, grading, packing, and shipping. And the risk of loss was on the growers because they only paid for the good ones and not the cults. It seems to me that Huntsville is a whole lot more than just plain advice. It is, in fact, the company had more control than Bland had. How do you respond to that? Bland had significant control, and I would say equal control as far as how the growing was to be done. I would also say that if you look to the statute, the Fair Labor Statutes Act, the exemption doesn't have a requirement for risk of loss, doesn't have a requirement for ownership. But the case law that's binding on us makes that a significant factor. As I understand it, the only way you distinguish Huntsville is that you claim that the supervision and control of the farming operations of the growers, in your case, is more extensive than in Huntsville. And my point is, it seems to me that that's wrong on the facts, that the facts of Huntsville are the company's control and supervision is at least as great as Bland's is. There's no indication in Huntsville that, as what we had in Bland, where Omar Cruz in Bland had unfettered access to the fields, was going there many times, multiple times a week. They owned the crops in Huntsville. They actually owned the crops. They purchased the crops in Huntsville. They purchased the crops here. You want me to read it to you? It says, Huntsville's agreements with the Rose Growers provide that the growers will lease the land so that Huntsville owned the land, or it controlled the land by lease. The crop to be the property of Huntsville at all times and under the supervision as to the best method of planting, production, digging, so forth. That seems to me more extensive than in your case. But if we look to what the statute requires, when the statute talks about production, cultivation and growing and harvesting, if you look to the fair reading of the statute, there's no doubt that Bland Farms is a farmer. There's no doubt that onions are agricultural commodities. And there's no doubt that Bland Farms was engaged in the growing process in concert with the integrated growers. There's no requirement, if you look to the fair reading of the statute, under the Encino Supreme Court case, that the activities in which Bland Farms was engaged in meet the language of the statute, following that Supreme Court guidance. And if we talk about cultivation, growing, and harvesting, and production, those are all activities that Bland Farms, a farmer, did on a farm, granted it was on land of its integrated growers, but these were all activities, and it's an extensive testimony to record, that these were important activities, and some of these growers testified that the most important part of growing was what you apply, you know, the directions that Omar gave them as to what to put on the crop, because they didn't want to lose the crop. They needed a viable crop, and modern agriculture recognizes that those are important activities related and directly related to the cultivation, production, and growing, and those are activities. Why does Bland then pay overtime to its packing shed employees when they pack the New York and Utah onions, but not when they pack the other Georgia growers' onions? Because we have Omar Cruz's testimony that his work with the onion farmers in New York was no different than how he worked with the contract growers in Georgia, and similarly with the growers in Utah. Well, there's the argument under Words v. Jackson and Perkins that Bland Farms may not even need to pay overtime for those to the extent that it's significantly involved. Bland Farms made the decision that for the Vidalia onions in close proximity here, where they are intimately involved on a, you know, multiple times a week basis in the fields, those onions are grown for the exclusive purpose and use of Bland Farms, that they are in concert and integrated with those growers. So you're suggesting that you are, that Bland Farms is just voluntarily paying overtime when you're dealing with the New York and the Utah onions, like that it's not required to do so? Well, yes, they don't have those, those operations currently are, but yes, there's an argument that they, that those onions do not need to, overtime does not need to be paid for the processing of those. So they're just voluntarily paying for the out-of-state onions? And they pay, I see my time is up. No overtime pay even after the Department of Labor filed its lawsuit, which is why the court assessed liquidated damages? No overtime, there were two bases, if I'm, there were two bases for the good faith defense for Bland Farms. The court, in its ruling below, made a determination on the first basis of the letter, yes, and it said that once, once the lawsuit was filed, Bland Farms could not rely on that letter. The court recognized an alternative basis, and in its order on pages 20 and 24, it recognized that Bland Farms had both a subjective and an objective good faith belief that it was a farmer of the onions, and in the court's decision below, the court even recognized that they've maintained that position throughout the litigation, and as the court recognized both in the post-trial order and the summary judgment order, that's not far-fetched, that there was evidence in the record that that would be reasonable, and yet the court did not, in making a ruling on the good faith defense argument, the court recognized subjective and objective good faith based on the alternative basis that it was a farmer, but then did not do its ruling on that, restricted its ruling just to the letter. So it recognized the basis for that good faith defense, but then actually just didn't rule on it. I noticed that your post-trial brief had a whole section on liquidated damages and argued that you were in good faith because you relied on the letter, but it did not argue the alternative basis that you are now arguing, and you argue in your brief on appeal, that in addition to relying on the letter, you had an independent good faith belief based on your reading of the law. You didn't argue that in your post-trial brief to the district court, and I'm wondering why we should not deem that argument waived. Well, I'd have to refer, I don't have that right in front of me, but I do know that in the amended pretrial order, we discussed that. I know at trial there was testimony on that. I know we've raised it here, and I'd have to go back and refer to the specific language in that post-trial brief as to whether or not that was specifically argued. I'll help you a little bit in that regard. In your proposed findings of fact and conclusions of law, you do set that out. Right. So were they filed at the same time as your post-trial brief, your proposed findings? Proposed findings of fact were filed a few days before trial, and then we did a post-trial brief in lieu of closing arguments is how the post-trial brief came about. Well, that works against you. I was thinking if they were simultaneous, but the court, the district court might have said, well, he said this in the pretrial order, and he said it in his pretrial proposed findings, but now he's relying solely on the DOL letter. That was not our intent, and we put in the record evidence, and we put in arguments. That was the alternative basis, and the court had recognized that as an alternative basis. I think you've reserved some time, Mr. Schron. Yes. We have a question here from the Department of Labor, Ms. Marcus. Good morning. May it please the Court. Sarah Marcus. I represent the Secretary of Labor. It seems from Your Honor's questions that you well understand that the outcome of this case was correct as the district court understood it. After trial, the district court made sound fact-finding that only one of the facts that the court found is even disputed, and it is not clearly erroneous. There is plenty of evidence in the record supporting the court's finding that Omar And, moreover, the district court was relying on directly applicable binding precedent from this court that controls the outcome of this case, so it was correct for the court to determine that Bland Farms was not the farmer of these onions for many of the reasons that Your Honors mentioned in your questions to counsel for Bland Farms. As to the second issue in the case, liquidated damages, as Your Honors are aware, liquidated damages are mandatory in FLSA enforcement actions like this one unless the employer can meet its burden of showing that it acted with subjective good faith and objective reasonableness, and as Judge Anderson mentioned, Bland Farms argued to the trial court that it was relying on the Department of Labor's letter. Is it true, though, that that issue, the alternative basis for the good faith don't charge me with liquidated damages argument, that was in the pretrial order and there was evidence at trial to support it, and it was in the proposed findings of fact and conclusions of law? Your Honor, I apologize. I'm not certain if it appears in the filings that occurred pretrial. I know that it was not in the post-hearing brief. There was some small amount of testimony about it at trial from Troy Bland, but it is the employer's burden to make a showing, and they were only relying on the letter in presenting their arguments to the court. Moreover, the district court, although it mentioned that it believed that Bland Farms had a subjective good faith in the argument that its lawyers were presenting in litigation, it didn't address whether that was sufficient to show objective reasonableness during the time period at issue. I think because it hadn't been presented with that argument, and again, it's the employer's burden to show that it should be relieved of being made to pay. And I understand his broad discretion. Even if there is good faith shown, the court can still, in its discretion, go ahead and award or not award. That's exactly right, Your Honor. The district court, even if it . . . But it did bother me that he relied solely on that, you know, that they could no longer rely on the letter, which bothers me a little bit because, you know, if they had a good faith belief that they were right under the law, it seemed like to me the court should have addressed that. Your Honor, it seemed that the court was trying to balance the facts before it and come to a fair conclusion given the information that the court had. Bland Farms was presenting itself as having relied on the Department of Labor's position based on a letter from 1985 that it had actually lost and received again during the course of the litigation and discovery, but it said that its understanding of the letter was that they were, according to the department, relieved from the responsibility of paying overtime. And I think in a decision that was fairly favorable to Bland Farms, the court said, well, by the time after an investigation, after Wage and Hour attempting to settle this case and explaining to you that you owed overtime under their interpretation, by the time they had referred the case to their solicitor's office and filed litigation, you should have been aware that you couldn't rely on the department's understanding of the exemption for a good faith belief that you were acting in accordance with the law. Was there any discussion about whether or not it was reasonable in light of Huntsville and Sweet Lake for Bland to think that they had a reasonable, objectively reasonable argument? Your Honor, there is a different portion of the opinion that Bland Farms has pointed to where the court expressed that it was fair for Bland Farms to litigate the case. The court did deny summary judgment and hear trial on the facts here. So they had a somewhat plausible theory, although, as Your Honors have noted, based on the facts as they were, it's quite clear from Huntsville that the exemption did not apply here. But the facts, the record does not show that Bland Farms had inquired of legal counsel prior to being engaged in this litigation and the investigation to determine whether the exemption applied, which is the sort of evidence that employers often use to show that they shouldn't have to pay liquidated damages. So it's not that they had that legal theory during the time that the, you know, before the investigation began. It was something that developed as the case was ongoing. I also share Judge Anderson's concern about the assessment of liquidated damages. Were the damages assessed solely because the Department of Labor filed suit and nothing else? I don't believe so, Your Honor. Liquidated damages are the default. They are mandatory unless an employer can make a showing. And so the damages were assessed because the district court exercised its discretion only to relieve Bland Farms of its automatic burden of paying them as to the portion of time when it was thought that Bland Farms had made a complete showing of subjective good faith and objective reasonableness. That means that if you have a letter that you're relying on every time the Department of Labor files a lawsuit, then you subject yourself to liability for liquidated damages? Aren't you entitled to defend yourself in the lawsuit? I mean, Bland Farms might have prevailed, right, in the lawsuit? Yes. Yes, Your Honor. Aren't you entitled to defend themselves in a lawsuit brought by the Department of Labor? Yes, Your Honor. It is somewhat rare that an employer would have a letter directly to it, and in fact had the letter been one of the official letters signed by the administrator, that could have been a total defense to back wages at all had the letter shown that Bland Farms' understanding of whether the exemption applied, given its facts, was reasonable. But you yourself mentioned that this position survived summary judgment, so how does that not have an effect on the objective reasonableness of Bland Farms' belief? Well, what survived summary judgment was the legal theory advanced by the attorneys that Bland Farms was sufficiently involved in the growers' operations that it was a farmer of the onions. The letter discussed purchasing the crops before harvest and being an owner before knowing what crops were going to be produced. So it was a different set of circumstances that was emphasized in the letter. So Bland Farms' theory of why they didn't need to pay overtime to these workers had actually shifted. But nonetheless, it survived summary judgment. So why is this not, up until the moment of verdict, why is it not objectively reasonable for Bland Farm to hold this belief? Your Honor, I think the district court was focused on the fact that Bland Farms was saying, the Department of Labor told us this was fine, but in fact the Department of Labor had been telling Bland Farms this was not fine. And in many cases where an employer is arguing that it should be relieved of the burden to pay liquidated damages, their reliance would be on something other than the department. It would be, we sought out legal advice, we consulted with an attorney, we understood the exemption to apply in this manner. And so nothing about that understanding would change in the course of litigation. So it wouldn't be the case in every case that the department's position would make the difference. But as is pointed out in our brief, there is precedent in this circuit for courts looking at where an employer is relying on the department, what the department's position, either public or in the case in particular, was, and at what point it was clear to the employer that the department did not agree with its position, and so that couldn't be the basis for its good faith and reasonableness. If your honors have no further questions. Well, I do. What if we agree that Bland was the farmer of at least some of the contract growers' onions? What should we do? Do we sort that out up here? Do we send it back to the district court? And this is just a hypothetical. Your Honor, I think you'd probably need to remand to the district court for a finding of whether there was any work week when all that the employees were handling were the onions where the exemption would have applied, although I think that the record reflects that there was so much mixing that there wouldn't be one of those work weeks. But I'm not certain, and the district court could make a finding. As you know, the damages were stipulated, too, and so the district court didn't make findings about the particular mix of onions, but it's quite clear from this court's precedent that if, for part of any work week, the packing shed employees were handling onions of which Bland Farms was not the farmer, that the exemption wouldn't apply for the whole work week. And with respect to if we are persuaded that the district court did not and should have considered also the alternative reason about liquidated damages, we ought to remand that, too, in light of the broad discretion of the district court. Is that not correct? Yes, Your Honor, that's correct. Thank you, Your Honors. Thank you, Ms. Marcus. Mr. Strachan, you have reserved some time for rebuttal. Thank you, Your Honors. I'll pick up a moment on Judge Branch's thought with regard to Bland Farms being the grower of those onions with its integrated growers. The court could look at the record and determine, you know, if the ruling is that Bland Farms is the grower of those onions, there is evidence in the record whereby if it's the grower of those onions, then there would be no overtime due because that essentially means that for most of those periods, the onions in the warehouse would all be Bland Farms' grown onions. And as to growing the onions, yes, there's a 1959 Huntsville case. There are other 1964 Sweet Lake and so forth. But none of those decisions really focus on the cultivation, growing, production, and harvesting, which is what Congress wrote into the agricultural exemption. So did Bland Farms make the argument that some of these onions were harvested on Bland Farms' farm and they were included within the group that were packed and shipped? Was this argument made, Judge? Yes. Yeah, the argument is made. There's testimony in the record. For instance, the years at issue at trial, 2012, half 2012, 2013, 2014. That's where the evidentiary record is. For 2014, there were three integrated growers. Bland Farms grew roughly, I think it was around 80 percent of the onions in its processing plant, in its packing shed, on its own land and grew the remaining, maybe it was 16 to 20 percent, with three integrated growers, for all three of those integrated growers in 2014. Not only were Bland Farms involved in a process from before the onions were planted all the way through, but Bland Farms also was involved in harvesting, essentially using its contractors, its labor, to harvest all those onions. So it did production, cultivation, growing, and harvesting for everybody in 2014. In 2013, it harvested some of Jerry Pittman's onions. In addition to production, cultivation, and growing with those integrated growers, we're all in this little 19-county Vidalia onion region where Bland Farms is in the fields on a weekly basis with these growers. In 2012, it's in the fields on a weekly basis, production, cultivation, and growing, and also did some harvesting of Ronnie McLeod's, one of its integrated growers. Ronnie McLeod was essentially across the street from the farm. This was an integrated enterprise. It was production, cultivation, and growing as required by the Fair Labor Standards Act Agricultural Exemption, which the legislative history says is one of the broadest ever put forth in a legislative proposal. This court does not even need to read the legislative history because Encino Motors instructs that where it's clear on the face, it's unambiguous on the statute, production, cultivation, and growing, Bland Farms is a farmer with an agricultural commodity, the onion, on a farm, on a farm, right? It's integrated growers and is engaged in production, cultivation, growing, and oftentimes harvesting. I mean, for 2014, harvesting all of it. So it was very integrated in this, and those onions are, you know. You have argued that the mere filing of the lawsuit by the Department of Labor does not render Bland Farms' reliance on the prior letter objectively unreasonable. What could the Department of Labor have done? What if the Department of Labor had just sent a letter revoking the earlier letter? Would Bland Farms have been on notice that its belief it didn't have to pay overtime was no longer objectively reasonable? Bland Farms, if it sent a notice that it's not objectively reasonable, you know. But I can tell you we had a discussion before this case was filed with the Department of Labor in which it was a clear disagreement, and we said, well, we will litigate this, and we think the statute allows for this exemption, that we are the farmers of this exemption. We are the farmers of these onions, and, you know, the court recognized that good faith, not just from the letter to the point where the lawsuit was filed, but the court recognized that good faith all the way on that growing basis, you know, through the litigation, through its post-trial brief. So whether or not it stopped because of the letter, the consistent good faith basis that the court recognizes present carried on through the litigation. But clearly at this point, when the lawsuit was filed, or if a letter had been sent revoking the earlier letter, Bland Farms is on notice the Department of Labor no longer holds the position that this is objectively reasonable. As to, yes, as to the purchase of the onions, yes, that's fair. Yes. But that doesn't account for the alternative basis that the court recognized, essentially the threshold issue in this case, that Bland Farms, you know, in the fields every day cultivating, growing, producing, and oftentimes harvesting these onions as a farmer with an agricultural commodity. It's not like it was in Farmers Reservoir in the Supreme Court case from 1949, where the court there said that the ditch diggers, essentially the ones that did canals and ditches in Colorado, were not engaged in agriculture because all they did is they just supplied water. They were just essentially a contractor that supplied water. What Bland Farms was doing was not an independent, it was an agricultural activity. It was an agricultural activity intertwined with these independent growers on a multiple times a week basis. Everything from where the seed gets planted, how it gets planted, what's happening to the soil, what happens to the field, soil samples, tissue samples, all the way through, telling them when to pull it up out of the ground because the heat units, Omar Cruz is the only person in Georgia that we can tell from the record, he's the expert in Vidalia onions, the only person using heat units, and these farmers, these independent growers relied on that. They followed that. Whenever Omar said, plow it up, it's now, they plow it up, it's now. And then oftentimes we come in with the crew in 2014 with everybody to harvest. It's not like the other cases. It's not like the earlier cases. Yes, these onions were for the exclusive use of Bland Farms. Yes, Bland Farms did not own them at the time they were planted, but there's nothing in the language of the FLSA that talks about ownership. There's nothing that talks about risk of loss. It is entirely focused on what are the activities. What are the activities of the employer that is employing the individuals in question? And this is a farm engaged in farming activities under the statute. And Encino Motors requires that reading. We love your argument. Thank you.